IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Keith Curtis and Tyneshia Brooks, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>vs.<br><br>Time Warner Entertainment-Advance/Newhouse Partnership,<br><br>Defendant. | C/A No. 3:12-cv-2370-JFA<br><br><br><br>**ORDER ON CONDITIONAL CLASS CERTIFICATION** |

## Introduction

Plaintiffs Keith Curtis and Tyneshia Brooks brought the instant suit asserting, among others, claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.* Plaintiffs are former inbound sales (IBS) representatives (also known as "telesales" representatives) for Defendant Time Warner Entertainment-Advance/Newhouse Partnership (Time Warner) who worked in Time Warner's call center in West Columbia, South Carolina. Plaintiffs allege damages to themselves and to members of a putative class based on Time Warner's alleged policy requiring IBS representatives to reconcile commission-eligible sales they recorded and tracked with commission-eligible sales recorded via Time Warner's sales-tracking software during unpaid time.

This matter is before the court on the motion of Plaintiffs for conditional certification of an FLSA collective action and for the issuance of a court-facilitated notice to prospective class members. *See* ECF No. 44. Time Warner opposes conditional certification. *See* ECF No. 59. After considering the briefs of the parties and the arguments presented at a hearing on this motion held on April 15, 2013, the court has determined that it will conditionally certify the collective action as set forth below.

## Summary of Plaintiff's FLSA Claims

Time Warner's IBS representatives are responsible for answering incoming calls from customers and potential customers and attempting to sell Time Warner's products and services to those callers. Time Warner pays its IBS representatives an hourly rate and commissions on sales they made. When answering calls, IBS representatives use billing software, such as a program known as ICOMS, to view a customer's account, enter sales information, and schedule installation of Time Warner products and services. IBS representatives can check the status of their sales and commissions using the GLOCENT sales-tracking software. Plaintiffs allege that Time Warner's ICOMS and GLOCENT software failed to properly record the sales and commissions IBS representatives earned. Thus, Plaintiffs contend that it was necessary for IBS representatives to periodically "reconcile" their sales. For example, IBS representatives might write down their commission-eligible sales and later check GLOCENT to verify that they had received credit for these sales. The GLOCENT software allowed employees to submit "discrepancy reports" to Time Warner when the employees felt that the software had not properly credited a sale. Plaintiffs allege that Time Warner instructed its IBS representatives to perform such reconciliation "off the clock," which resulted in these employees performing uncompensated work in violation of the FLSA.

## Legal Standard

Section 216(b) of the FLSA provides:

> An action . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Although the FLSA does not require district courts to do so, they "have discretion in appropriate cases to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs" of the action and that they may opt-in as plaintiffs. *Hoffman–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). District courts deciding whether to certify an FLSA collective action typically engage in a two-step process. *See, e.g.*, *Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 535–36 (3d Cir. 2012); *Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258–62 (11th Cir. 2008); *Cromer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546–47 (6th Cir. 2006); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995), *overruled in part on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).  In general, at the first step, the court considers "whether other similarly situated employees should be notified."[1] *Morgan*, 551 F.3d at 1260.  The second step, which typically occurs after substantial discovery has taken place, "is triggered by an employer's motion for decertification." *Id.* at 1261.  Here, because it has "a much thicker record than it had at the notice stage, [the court] can therefore make a more informed factual determination of similarity." *Id.*  Although the Fourth Circuit has not directly addressed the appropriate standard for certifying a collective action under § 216(b), district courts in this circuit, including this court, follow the process set forth in the cases identified above. *See Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 367–68 (D.S.C. 2012); *Simons v. Pryor's, Inc.*, 2011 WL 6012484, at *1–*2 (D.S.C. Nov. 30, 2011); *Steinberg v. T.Q. Logistics, Inc.*, 2011 WL 1335191, at *1–*2 (D.S.C. Apr. 7, 2011); *see generally Purdham v. Fairfax Cnty. Pub. Schs.*, 629 F. Supp. 2d 544, 547–48 (E.D. Va. 2009).

---

[1] If the court grants the plaintiff's motion at this step and conditionally certifies the collective action, it "does not produce a class with an independent legal status, or join additional parties to the action." *Genesis Healthcare Corp. v. Symczyk*, 2013 WL 1567370, at *6 (U.S. Apr. 16, 2013).  Rather, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees, . . . who in turn become parties to a collective action only by filing written consent with the court." *Id.* (citations omitted).

Courts have described the plaintiff's burden at the first, or "notice," step using various phrases, for example requiring that plaintiffs show a "'reasonable basis' for his claim that there are other similarly situated employees," *Morgan*, 551 F.3d at 1260, or that plaintiffs "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law,'" *Myers*, 624 F.3d at 555 (citation omitted). The cases appear to agree that this standard is "fairly lenient." *Morgan*, 551 F.3d at 1261; *Cromer*, 454 F.3d at 547; *Mooney*, 54 F.3d at 1214. The plaintiff bears a "low standard of proof" at this stage because the district court is simply "determin[ing] *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555. Despite the leniency of this standard, however, the plaintiff cannot meet his or her burden simply by unsupported assertions. *Id.* (citation omitted); *Morgan*, 551 F.3d at 1261 (citation omitted); *see Zavala*, 691 F.3d at 536 n.4 (noting that under the "modest factual showing" standard, "a plaintiff must produce some evidence, 'beyond mere speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees" (citation omitted)); *Purdham*, 629 F. Supp. 2d at 548 (noting that the plaintiff's burden is neither "onerous" nor "invisible").

If the court grants the plaintiff's motion for conditional certification, the defendant may file a motion for decertification. At this second step, "the district court will, on a fuller record, determine . . . whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555. At this step, which "usually occurs just before the end of discovery, or at its close," the court's review "is less lenient, and the plaintiff bears a heavier burden." *Morgan*, 551 F.3d at 1261 (citation omitted). Courts have identified a number of factors to consider at this stage, including "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id.* (citations

omitted) (alteration in original).   If the record reveals that the opt-in plaintiffs are not substantially similar to the named plaintiffs, "the action may be 'de-certified' . . . , and the opt-in plaintiffs' claims may be dismissed without prejudice."  *Myers*, 624 F.3d at 555.

Although the instant case is at the first step, where as explained above courts typically apply a more lenient standard, Time Warner argues that this court should apply an "intermediate" standard.   In this regard, the court observes that "the statute of limitations continues to run on unnamed class members' claims until they opt into the collective action," so in most cases "courts have concluded that the objectives to be served through a collective action justify the conditional certification of a class of putative plaintiffs early in a proceeding, typically before any significant discovery, upon an initial showing that the members of the class are similarly situated."  *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008).   In some cases, however, "where the parties have already engaged in substantial discovery," a few district courts have "utilize[d] a somewhat heightened amount of scrutiny when reviewing the plaintiffs' motion."  *MacGregor v. Farmers Ins. Exchange*, 2012 WL 2974679, at *2 (D.S.C. July 20, 2012) (quoting *McClean v. Health Sys., Inc.*, 2011 WL 6153091, at *4 (W.D. Mo. Dec. 12, 2011)) (internal quotation marks omitted).

This court declines to follow Time Warner's suggestion to apply the intermediate standard.   Although the parties have completed some discovery in this case, including taking several depositions, it appears to the court that significant additional discovery remains.  *See McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010) (applying lenient standard applied where some discovery had been conducted but significant additional discovery remained to be completed).   Where extensive discovery remains, courts usually apply the more lenient standard applicable at the first step.  *See, e.g.*, *id.* at 802–03 (noting that the more onerous standard is only appropriate "after discovery is largely complete and the matter is ready for

trial"); *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004) (noting that it may apply the intermediate standard after "the parties have conducted extensive discovery"). Moreover, this District Court has applied the more lenient standard in cases where the parties have engaged in some discovery. *Simons*, 2011 WL 6012484, at *2–*3 (applying lenient standard in reviewing plaintiff's renewed motion for conditional certification after denying original motion for conditional certification so that parties could engage in discovery); *cf. MacGregor*, 2012 WL 2974679, at *2–*3 (applying "only limited additional scrutiny" to plaintiffs' second motion for conditional certification where parties had engaged in discovery). Therefore, this court will apply the widely-accepted, first step standard outlined above to Plaintiffs' motion for conditional certification.

## Discussion

In their motion, Plaintiffs ask the court to conditionally certify the following class of persons:

> All current or former non-exempt Time Warner Entertainment-Advance/Newhouse Partnership (TWEAN) telesales and retention representatives employed at any TWEAN call center in the United States, on or after August 20, 2009 to the present, who were required to use sales software, including but not limited to, the GLOCENT and/or ICOMS software pursuant to their employment by TWEAN and were instructed to reconcile their actual sales during uncompensated time and/or breaks.

ECF No. 44-2, at 1. The court finds that Plaintiffs have made the modest factual showing required for conditional certification. As discussed in more detail below, however, the court believes that the class of persons to whom notification may be sent should not include retention representatives. Further, the class should be limited to IBS or telesales representatives who used the GLOCENT software between August 20, 2009 and June 30, 2011.

The Plaintiffs have shown a reasonable basis for their claims that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law. *See Myers*,

624 F.3d at 555; *Morgan*, 551 F.3d at 1260. For example, Plaintiffs have specifically alleged that it was Time Warner's company-wide policy that IBS representatives reconcile sales during uncompensated time. Plaintiffs have also submitted the affidavit of John Oakley, a former IBS representative at Time Warner's West Columbia call center, which is corroborative of the allegations in Plaintiffs' Complaint. *See* ECF No. 44-1. Mr. Oakley testified that he worked with one hundred other IBS representatives at the West Columbia call center and that the Complaint accurately reflects his experience as an IBS representative and the experience of his coworkers. *See id.* ¶¶ 24, 26.

Moreover, after the Plaintiffs filed their motion for conditional class certification, the parties deposed Plaintiffs, Mr. Oakley, and Charmaine Harden, a current Time Warner employee and manager of IBS representatives who supervised Mr. Oakley when he worked at Time Warner. The depositions of Plaintiffs, Mr. Oakley, and Ms. Harden further support the existence of a policy requiring IBS representatives to reconcile sales during uncompensated time. For example, Plaintiff Brooks and Mr. Oakley both testified that their supervisors required them to reconcile sales. To corroborate this testimony, Plaintiffs submitted an email from Michelle Fordam, a former supervisor of IBS representatives, to members of her telesales team (including Plaintiff Curtis) instructing them to "[e]nsure that [they] are checking [their] Glocent and [their] scorecard daily." ECF No. 63-7. Notably, other supervisors, including Fran Hass, the Director of Inbound Sales for South Carolina, are copied on this email. Further, Plaintiff Curtis testified that his supervisor created a printed sales tracking sheet for members of his team to use in reconciliation.

Also, there is evidence that Time Warner required IBS representatives to reconcile sales during unpaid time. Plaintiffs and Mr. Oakley all testified to this. Importantly, Ms. Harden testified that when she started with Time Warner, *her* supervisor, Mr. Hass, directed her that IBS

representatives were supposed to reconcile sales on their own time, or off the clock. Although Ms. Harden is only one manager (who supervised approximately twelve to fifteen IBS representatives), this is some evidence that there was at least an informal policy requiring off-the-clock reconciliation which was passed down from the Director of Inbound Sales for South Carolina to managers and ultimately to the IBS representatives.[2]

Furthermore, Ms. Harden testified that Time Warner changed this policy via an email sent on May 10, 2010. In particular, Tony Lewis, the Regional Director of Inbound Sales, sent an email to Time Warner employees acknowledging problems with the GLOCENT software and encouraging employees to reconcile sales, but directing that they do so during compensated time only. In relevant part, the email states:

> To all Inbound Sales Agents,
>
> Over the last few weeks there have been some questions concerning how and when to enter discrepancies for missing sales in our commission reporting tool. Although Glocent is very accurate and records most sales accurately, *there are times when you must check your work orders and make an entry to dispute a missing sale*. It is our expectation that you perform any manual checks in between calls as time permits. Most often, this can easily be accomplished if done daily by checking the closed work orders from the day prior. *If several days have elapsed this becomes more difficult and time consuming. You are encouraged to validate your work orders as no system can be 100% accurate due to human interactions with our billing system. It is mutually beneficial to everyone involved [that] these work orders [be] confirmed*. If you are unable to perform these checks at times of availability, please talk with your Supervisor for a good time to perform these confirmations. *At no time should these validations occur while you are not being compensated by Time Warner Cable*.

---

[2] It appears that Ms. Harden did not explicitly follow this directive with respect to the IBS representatives she supervised (which included Mr. Oakley but did not include Plaintiffs), as she testified that she told them they should only reconcile during their own time if they could not do so in between calls. In the court's view, however, this testimony does not negate the evidence that a common policy existed; it instead goes to the "disparate factual and employment settings of the individual plaintiffs," which the court considers at the second step. *Myers*, 624 F.3d at 555.

ECF No. 63-3 (emphasis added). This further corroborates Plaintiffs' allegations regarding reconciliation, problems with GLOCENT, and an informal policy requiring employees to reconcile sales during uncompensated time prior to the date of the email.

Time Warner argues that this court should not conditionally certify a nationwide class of potential persons because Plaintiffs have not shown evidence of a common policy or scheme outside of the West Columbia call center. Initially, the court notes that although some discovery has occurred, Time Warner has objected to Plaintiffs' discovery requests to the extent they seek information regarding any facility other than the West Columbia call center.[3] In any event, Plaintiffs have put forth some evidence that the informal policy applied elsewhere. For example, the above-quoted email was sent to the addresses "DL-RAL-Telesales," "dl-car-scctctelesales," "DL-CAR-RALTELESALES-LEADERSHIP," and "DL-CAR-SCTELESALES-LEADERSHIP." According to Ms. Harden, those addresses correspond to the Raleigh and South Carolina telesales teams, and supervisors, managers, and IBS representatives in those locations would have received this email. Additionally, Plaintiff Curtis testified that Time Warner routed calls to its West Columbia call center from its other locations in New York, Charlotte, and Winston-Salem. Plaintiff Curtis and Mr. Oakley testified that they heard Time Warner's Raleigh location used GLOCENT, and Mr. Oakley also testified that Time Warner's New York call center uses GLOCENT.

To rebut this evidence, Time Warner submitted the declarations of four of its current employees, three of whom are former IBS representatives and one of whom is a former supervisor of IBS representatives. In general, these employees aver that IBS representatives were not required to reconcile sales; that, when they did perform reconciliation, they did so on the clock; and that they were never encouraged or required to perform reconciliation off the

clock.   Time Warner also submitted an analysis performed by one of its attorneys which allegedly shows that when Plaintiffs submitted discrepancy reports, in many cases they did so during paid time.

At this stage of the litigation, however, the court's role is not to resolve factual disputes or make credibility determinations.  *See McKnight*, 756 F. Supp. 2d at 802 (citing cases).  Here, it is sufficient that Plaintiffs have shown a reasonable basis for their claim that other similarly-situated plaintiffs exist.   Again, this lenient standard is in part premised on the fact that the statute of limitations continues to run on the claims of potential opt-in plaintiffs while significant additional discovery remains in this case.   In this regard, Plaintiffs have not yet had the opportunity to depose the declarants Time Warner relies on, and Time Warner has not produced in discovery the data underlying its analysis of Plaintiffs' discrepancy reports.  For example, it may be that these data show nothing about when Plaintiffs in fact reconciled their sales, but rather only that, after reconciliation, Plaintiffs submitted their discrepancy reports on the clock in some cases.

Furthermore, because Time Warner advocated that this court apply the intermediate standard, many of its arguments against conditional certification do not go to the issue of whether Plaintiffs have made a modest factual showing that other similarly-situated potential plaintiffs exist, but rather to whether the proposed plaintiff class is *in fact* similarly situated to the named plaintiffs.  The court believes it should entertain these arguments on a more complete factual record.  And if Time Warner files a motion for decertification, Plaintiffs will bear a heavier burden.  At that step, the court will consider the differences between the factual and employment settings of all individual plaintiffs, any defenses available to Time Warner which are individual to a particular plaintiff, and any relevant fairness and procedural considerations

---

[3] Time Warner's objections to discovery responses are the subject of several pending motions to compel.

which militate in favor of decertification. At this point, however, Plaintiffs have met their modest burden to show that similarly-situated potential plaintiffs exist, and conditional certification is appropriate.

Time Warner has also objected to the scope of Plaintiffs' proposed class, contending that Plaintiffs have impermissibly broadened the class beyond the scope of their Complaint to include retention representatives and individuals who use or used sales software other than GLOCENT. The court agrees that the class of persons to whom notice may be sent should be narrowed in some respects. First, Plaintiffs have shown no evidence that malfunctions in any software other than GLOCENT caused IBS representatives to have to reconcile sales off the clock. Next, Plaintiffs have not shown any evidence that retention representatives were required to reconcile sales off the clock. In fact, Time Warner produced some evidence that retention representatives do not normally earn commissions, do not use GLOCENT, and do not reconcile sales. Although the Plaintiffs' burden at this stage of the litigation is light, they must still "produce some evidence, 'beyond mere speculation,' of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees." *Zavala*, 691 F.3d at 536 n.4 (citation omitted).

Additionally, Time Warner argues that the class should not extend to the present, but rather should be limited to IBS representatives who performed reconciliation off the clock prior to May 10, 2011, the date Mr. Lewis sent the above-quoted email. Also, Time Warner's Vice President of Telesales, Kevin Bush, testified that Time Warner ceased using GLOCENT company-wide in June of 2011, *see* ECF No. 59-2, at ¶ 11, and thus Time Warner argues in the alternative that the court should limit the proposed class at this point. The court agrees with the latter argument. Although the above email went only to IBS representatives at call centers in South Carolina and in Raleigh, and thus the alleged policy may have continued at other call

centers, the court found above that the proposed class should be limited to IBS representatives who used the GLOCENT software. It appears, therefore, that there are no IBS representatives at any Time Warner call center who would have used GLOCENT after June of 2011, and thus the class should be limited accordingly.

As a final limitation, Time Warner argues that the proposed class should not extend beyond the West Columbia call center. The court disagrees. Plaintiffs submitted evidence of an informal policy requiring off the clock reconciliation in other call centers, for example in the form of the email from Mr. Lewis, the Regional Director of Inbound Sales, to IBS representatives, managers, and supervisors in South Carolina and in Raleigh, North Carolina. Moreover, Plaintiffs have submitted testimony that GLOCENT is or was used in other call centers, including in New York. This modest factual showing is sufficient to justify a class of nationwide scope at this stage in the litigation.

Based on the foregoing, the court finds that Plaintiffs have satisfied the requirements for conditional certification. Plaintiffs may send court-authorized notice, discussed in more detail below, to the following class of persons[4]:

> All current or former non-exempt Time Warner inbound sales representatives employed at any Time Warner call center in the United States who were required to use the GLOCENT software pursuant to their employment and were instructed to reconcile their actual sales during uncompensated time and/or breaks, at any point between August 20, 2009 and June 30, 2011.

Time Warner is hereby ordered to produce to Plaintiffs, within ten (10) days of this Order, in electronic form, the following information, to the extent it is in Time Warner's possession or control: (1) the names of all members of this class; and (2) any contact information for such members, including, if available, their last known addresses and telephone numbers.

---

[4] At the hearing on this matter, counsel for Plaintiffs moved orally to amend the Complaint to include the proposed class from Plaintiffs' motion for conditional certification. In light of the court's ruling conditionally certifying a class that is narrower than the Plaintiffs' proposed class, Plaintiffs' oral motion is denied.

Regarding the form of the court-authorized notice, the court elects to modify the proposed court-authorized notice Plaintiffs submitted along with their motion for conditional certification. *See* ECF No. 44-3. In particular, the court-authorized notice should reflect the narrower class the court has conditionally certified. Also, Time Warner objects that the court-authorized notice should refer only to the Plaintiffs' FLSA claims, and the court agrees. Thus, the court has removed all reference in the notice to Plaintiffs' state law claims.

Finally, Time Warner argues that the court-authorized notice should state that a putative class member may only opt-in if that member's written consent to join is filed within three years of that member's cause of action accruing. *See* 29 U.S.C. §§ 255(a), 256(b). More specifically, § 255(a) states that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. For opt-in plaintiffs, as opposed to named plaintiffs, § 256(b) states that a cause of action is considered to be commenced "on the subsequent date on which . . . written consent is filed in the court in which the action was commenced," i.e., not the date the complaint was filed. However, Plaintiffs' proposed court-authorized notice states that a putative opt-in plaintiff may join this action if he or she met certain criteria on or after August 20, 2009, three years prior to the date Plaintiffs filed their Complaint. Because the statute of limitations continues to run until a putative plaintiff's written consent is filed, *see, e.g.*, *Houston*, 591 F. Supp. 2d at 831, Time Warner objects that the August 20, 2009 date defines a class that is too broad under the FLSA.

In their motion for conditional class certification, Plaintiffs acknowledge the effect on opt-in plaintiffs of the statute of limitations. Still, Plaintiffs suggest that the court might mitigate some of the potential for barred claims by ordering equitable tolling. *See* ECF No. 44. In particular, they contend that Time Warner failed to properly respond to discovery requests which

were due on January 8, 2013, and thus the court may equitably toll the statute of limitations based on Time Warner's alleged misconduct. *See Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002). However, Plaintiffs also suggest that the court postpone any decision on equitable tolling until after the opt-in period has elapsed.

The court agrees with Plaintiffs in this regard, and accordingly it will reserve judgment on the question of equitable tolling until after the opt-in period has elapsed. Notably, it may be that no member of the conditionally certified class for whom equitable tolling would be necessary will opt-in, thus mooting the issue. For this reason, the court declines to narrow the applicable date (August 20, 2009) in the court-authorized notice as suggested by Time Warner. After the opt-in period has expired, Time Warner may raise the statute of limitations as a defense to the claim of any individual plaintiff in an appropriate pleading.

The court-authorized notice is attached to this Order as Exhibit 1, and the court-authorized consent form is attached to this Order as Exhibit 2. The putative members of the collective action will have sixty (60) days from the date notices are mailed to opt-in to this action. Plaintiffs are directed to notify the court of the date the court-approved notices are mailed.

Finally, because Time Warner will provide Plaintiffs with the names and contact information for the members of the class conditionally certified, the court denies Plaintiffs' request to further require Time Warner to post the court-authorized notice in call centers in which class members work. Plaintiffs have not explained why notice by mail and/or telephone is insufficient. Further, the court finds that these methods of notice are consistent with its "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Vargas v. General Nutrition Centers, Inc.*, 2012 WL 5336166, at *12 (W.D. Pa. Oct. 26, 2012); *see also Sharer v. Tandberg, Inc.*, 2006 WL

14

2988104, at *3 (E.D. Va. Oct. 17, 2006) (approving similar method of notice and denying request to also require defendant to post notice).

IT IS SO ORDERED.

May 3, 2013
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

# EXHIBIT 1

# COURT-AUTHORIZED NOTIFICATION

**IMPORTANT NOTICE ABOUT YOUR RIGHT TO JOIN A LAWSUIT SEEKING TO RECOVER UNPAID WAGES AND OVERTIME COMPENSATION FROM TIME WARNER ENTERTAINMENT-ADVANCE/NEWHOUSE PARTNERSHIP**

TO: CURRENT AND FORMER INBOUND SALES (AKA TELESALES) REPRESENTATIVES OF TIME WARNER ENTERTAINMENT-ADVANCE/NEWHOUSE PARTNERSHIP (TIME WARNER) WHO, AT ANY POINT BETWEEN AUGUST 20, 2009 AND JUNE 30, 2011: (1) WERE EMPLOYED AT A TIME WARNER CALL CENTER IN THE UNITED STATES; (2) WERE PAID AN HOURLY RATE PLUS COMMISSIONS; (3) WERE REQUIRED TO USE THE GLOCENT SOFTWARE PURSUANT TO THEIR EMPLOYMENT; (4) WERE INSTRUCTED TO RECONCILE THEIR ACTUAL SALES DURING UNCOMPENSATED TIME AND/OR BREAKS; AND (5) PERFORMED THIS TASK DURING TIME FOR WHICH THEY WERE NOT PAID.

RE: YOUR RIGHT TO JOIN A LAWSUIT SEEKING TO RECOVER UNPAID COMPENSATION

DATE: [INSERT DATE NOTICE IS MAILED]

**1. WHY YOU ARE RECEIVING THIS NOTICE.**

This Notice is to inform you of a collective action lawsuit in which you may be "similarly situated" to the named Plaintiffs and to advise you that your rights under the federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.* may be affected by this lawsuit, to advise you of your potential right to participate in this lawsuit, and to instruct you on the procedure for participating in this lawsuit, if you choose to do so.

**2. DESCRIPTION OF THE LAWSUIT.**

Keith Curtis and Tyneshia Brooks (Plaintiffs) filed a Complaint against Time Warner in the United States District Court for the District of South Carolina, Columbia Division, Civil Action No. 3: l2-cv-02370-JFA.

Plaintiffs' Complaint alleges, among other causes of action, that Defendant violated the FLSA by requiring Time Warner telesales representatives to perform essential employment tasks during uncompensated personal time and breaks. Specifically, Plaintiffs allege that defects in Time Warner's GLOCENT software resulted in a failure to properly record the sales and commissions earned by telesales representatives; that Time Warner telesales representatives were instructed by Time Warner supervisors and/or managers to reconcile these discrepancies during unpaid time; and that telesales representatives were not paid for the time they spent reconciling the discrepancies created by the GLOCENT software. Plaintiffs allege that this conduct resulted in non-payment of wages and overtime due to telesales representatives.

Time Warner denies the Plaintiffs' claims and states that it properly paid all wages owed to Plaintiffs.

This case is in the early stages of litigation, and the Court has not ruled on Plaintiffs' claims or Time Warner's defenses.

## 3. YOUR RIGHT TO PARTICIPATE IN THIS SUIT.

You may be able to join this lawsuit, or "opt-in," as a Party if you are a current or former telesales representative of Time Warner who, at any point between August 20, 2009 and June 30, 2011 also met the following criteria: (1) you were employed at a Time Warner call center in the United States; (2) you were paid an hourly rate plus commissions; (3) you were required to use the GLOCENT software pursuant to your employment; (4) you were instructed to reconcile your actual sales during uncompensated time and/or breaks; and (5) you performed this task during time for which you were not paid.

If you have received any communication and compensation from the Defendant purporting to compensate your for previously uncompensated work, you may still be entitled to standard and/or overtime compensation as well as liquidated damages in an amount equal to your entire claim, attorneys' fees, and costs. Neither your receipt nor your acceptance of any monies affects your right to participate in this lawsuit.

You are not required to join this lawsuit. If, however, you wish to join as a Party, you may sign the enclosed "Consent to Become a Party" form and mail it to Plaintiffs' counsel at:

Richard A. Harpootlian
Graham L. Newman
M. David Scott
Christopher P. Kenney
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street
Post Office Box 1040
Columbia, South Carolina 29202
(803) 252-4848 (phone)
(803) 252-4810 (facsimile)
rah@harpootlianlaw.com
gln@harpootlianlaw.com
mds@harpootlianlaw.com
cpk@harpootlianlaw.com

If you receive this notice but do not have an accompanying "Consent to Become a Party" form, you can contact Plaintiffs' counsel to obtain a form.

You must either return the signed form to Plaintiffs' counsel or retain other counsel in time for counsel to file your "Consent to Become a Party" form in this action with the United States District Court for the District of South Carolina on or before [60 Days from date this notice is mailed]. If you fail to file a "Consent to Become a Party" form with the Court on or before this deadline, you will not be able to participate in this lawsuit.

If you file a "Consent to Become a Party" form, the Court may decide whether you are a proper Party to this lawsuit.

## 4. EFFECT OF JOINING THIS LAWSUIT.

If you choose to join in this lawsuit, you will be bound by the Judgment, whether it is favorable or unfavorable. You will also give up the right to file a suit in a separate action for the claims made in this case.

The attorneys for the Plaintiffs seek payment of attorneys' fees on a contingency fee basis out of any recovery. If there is no recovery, there will be no attorneys' fees. If there is a recovery, the attorneys for the Plaintiffs will receive a part of any settlement obtained or money judgment entered in favor of the Plaintiffs. If you join this suit and agree to be represented by Plaintiffs' counsel, then you agree to a contingency fee agreement, a copy of which is available from Plaintiffs' counsel, and you designate Plaintiffs' counsel as your attorney to make decisions on your behalf concerning this litigation, the method and manner of conducting the litigation, and all other matters pertaining to this lawsuit.

## 5. NO LEGAL EFFECT IN NOT JOINING THIS LAWSUIT.

If you choose not to join this suit, your rights will not be affected by any judgment or settlement rendered in this case, whether favorable or unfavorable. If you choose not to join in the lawsuit, you are free to file your own lawsuit and you may be represented by your attorney of choice.

## 6. NO RETALIATION PERMITTED.

Federal law prohibits TWEAN from discriminating or retaliating against you because you have exercised your rights under the FLSA by filing or joining a lawsuit seeking to enforce your rights. Examples of prohibited retaliation include: discharge from employment, demotion, suspension, or other adverse actions.

## 7. YOUR LEGAL REPRESENTATION IF YOU JOIN.

If you choose to join this suit, your interests will be represented by Plaintiffs' attorneys, who are:

Richard A. Harpootlian
Graham L. Newman
M. David Scott
Christopher P. Kenney
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street
Post Office Box 1040
Columbia, South Carolina 29202
(803) 252-4848 (phone)
(803) 252-4810 (facsimile)
rah@harpootlianlaw.com
gln@harpootlianlaw.com

mds@harpootlianlaw.com
cpk@harpootlianlaw.com

Todd Ellis
LAW OFFICE OF TODD ELLIS, P.A.
7911 Broad River Road, Suite 100
Irmo, South Carolina 29063
(803) 732-0123 (phone)
(803) 732-0124 (facsimile)
todd@toddellislaw.com

James M. Griffin
Margaret Fox
LEWIS BABCOCK & GRIFFIN, LLP
Post Office Box 11208
Columbia, SC 29202
(803) 771-8000
(803) 733-3541 facsimile
jmg@lbglegal.com
mnf@lbglegal.com

## 8. FURTHER INFORMATION.

Further information about this Notice, the deadline for filing a "Consent to Become a Party" form, or questions concerning this lawsuit may be obtained by writing, emailing, or telephoning Plaintiffs' counsel at the address, email, or telephone number stated above.

# EXHIBIT 2

# COURT-AUTHORIZED CONSENT FORM

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

Keith Curtis and Tyneshia Brooks, *individually and on behalf of all others similarly situated*,

        Plaintiffs,

vs.

Time Warner Entertainment-Advance/Newhouse Partnership,

        Defendant.

C/A No. 3:12-cv-2370-JFA

**CONSENT TO BECOME A PARTY
TO A COLLECTIVE ACTION
PURSUANT TO 29 U.S.C. § 216**

The undersigned, a current or former employee of Defendant Time Warner Entertainment-Advance/Newhouse Partnership, hereby consents to become a Party to the Complaint filed in this action, effective on this __ day of _____, 2013.

_____
Signature

_____
Print Name

_____
Address

_____
City, State, Zip Code

22